IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

|  |  |  |
|---|---|---|
| SELECTA KLEMM GMBH CO. KG, KLEMM & SOHN GMBH & CO. KG, | § § § § § § § § § § § § § § § § § | Civil Action No. |
| Plaintiffs, | | |
| v. | | JURY TRIAL DEMANDED |
| WESTHOFF VERTRIEBSGESELLSCHAFT, MBH, VIVERO INTERNACIONAL, S.A. DE C.V., PLANT SOURCE INTERNATIONAL MEXICO, COHEN PROPAGATION NURSERIES LTD., | | |
| Defendants. | | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiffs Selecta Klemm GmbH Co. KG and Klemm & Sohn GmbH & Co. KG, (collectively, "Selecta") bring this patent infringement action against Defendants Westhoff Vertriebsgesellschaft, mbH ("Westhoff"), Vivero Internacional, S.A. de C.V. ("Vivero"), Plant Source International Mexico ("PSI Mexico"), and Cohen Propagation Nurseries, Ltd. ("Cohen"), (collectively, "Defendants"), as follows:

**NATURE OF THE ACTION**

1.      This is a civil action for infringement of U.S. Patent Nos. 10,588,288 ("the '288 patent") and 11,266,114 ("the '114 patent") (collectively, the "Asserted Patents"), under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*

1

2.     Selecta is a leading breeder of new varieties of flowering plants, with operations around the globe.  Selecta depends on its intellectual property protections to support its efforts to use its breeding expertise to continue to produce new varieties of flowering plants.

3.     Selecta brings this patent infringement action to protect its valuable investments and patented technology related to novel and desirable petunia varieties displaying attractive spotted color patterns and methods of breeding petunia varieties with such spotted color patterns.

4.     Westhoff has long known of the Asserted Patents and the patent family to which they belong, and has long known of Selecta's proprietary position with respect to the novel spotted petunia varieties described and claimed in the Asserted Patent and its family members.  Westhoff, acting on its own and through its co-Defendant nurseries Vivero, PSI Mexico, and Cohen, has refused to acknowledge Selecta's intellectual property rights and has refused to cease infringement of the Asserted Patents, or to bring itself in compliance with Selecta's licensing program for the Asserted Patents.  Accordingly, Selecta brings this action against all Defendants to stop ongoing and future infringement of the Asserted Patents and to seek damages for infringement of its patent rights.

## THE PARTIES

5.     Plaintiff Selecta Klemm GmbH Co. KG is a limited partnership organized and existing under the laws of the Federal Republic of Germany having its address at Hanfäcker 10 70378, Stuttgart, Germany.

6.     Plaintiff Klemm & Sohn GmbH & Co. KG is a limited partnership organized and existing under the laws of the Federal Republic of Germany having its address at Hanfäcker 10 70378, Stuttgart, Germany.

7.      Defendant Westhoff Vertriebsgesellschaft, mbH is a sales company organized and existing under the laws of the Federal Republic of Germany having its address at Fresenhorst 22-24, 46354 Südlohn, Germany.

8.      Defendant Vivero Internacional, S.A. de C.V. is a company organized and existing under the laws of the United Mexican States having its address at Carr. Casasano-Calderón Km. 1 Casasano, Cuautla, Morelos 62748, Mexico.

9.      Defendant Plant Source International Mexico is a company organized and existing under the laws of the United Mexican States having its address at Calle Lázaro Cárdenas s/n Col. El Pedregal, C.P. 62790, Xochitepec, Morelos, Mexico.

10.     Defendant Cohen Propagation Nurseries, Ltd. is a company organized and existing under the laws of the State of Israel having its address at Ha-Dolev St 33, Moshav Kfar HaNagid, Israel.

11.     The claims of the Asserted Patents are infringed by various petunia varieties and products, including all petunias marketed and sold in the United States under the brand "Discoball™" by Westhoff and its co-Defendants, because on information and belief those petunias were made by practicing at least one of the processes claimed in the Asserted Patents (collectively, "Accused Products").  Defendants Vivero, PSI Mexico, and Cohen work with each other and with Defendant Westhoff to manufacture, import, distribute, offer to sell and/or sell these infringing Accused Products in the United States.

## JURISDICTION AND VENUE

12.     This action arises under the patent laws of the United States, Title 35 of the United States Code. Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) and the patent laws of the United States, 35 U.S.C. § 1, *et seq*.

13.     The Court has personal jurisdiction over Defendants consistent with the Texas Long Arm Statute. This Court has personal jurisdiction over Defendants in this action because, among other reasons, Defendants have committed, or imminently will commit, infringing acts within the Eastern District of Texas giving rise to this action and have established minimum contacts with the forum state of Texas. Defendants conduct business in this District.

14.     This Court has personal jurisdiction over Defendants because Defendants have committed and continue to commit acts of infringement in violation of 35 U.S.C. § 271 and place infringing products into the stream of commerce, with the knowledge or understanding that such products are sold in the State of Texas, including in this District.  Defendants have purposefully availed themselves of the privileges of conducting business in the State of Texas; Defendants regularly conduct business within the State of Texas, including at least by virtue of Defendant's infringing products, which are, or were at least made, used, imported, sold, and/or offered for sale in, the State of Texas. Further, this Court has general jurisdiction over Defendants, including due to its continuous and systematic contacts with the State of Texas. Further, on information and belief, Defendants are subject to the Court's jurisdiction, including because Defendants have committed patent infringement in the State of Texas.

15.     Alternatively, Defendants are subject to the Court's jurisdiction pursuant to Fed. R. Civ. P. 4(k)(2) because Plaintiffs' claims arise under federal law and the Defendants are not subject to jurisdiction in any state's courts of general jurisdiction and exercising jurisdiction over each Defendant is consistent with the United States Constitution and laws.

16.     Venue is proper against Defendants, including pursuant to § 1391(c)(3), including because Defendants are foreign corporations which are not a resident in the United States or any

judicial district therein, including this District.  Defendants manufacture, import, offer to sell and/or sell Accused Products in the United States, including in this District.

17.    Further, on information and belief, Defendants are subject to the venue in this District, including because Defendants have committed patent infringement in this District. Pursuant to 35 U.S.C. § 271, Defendants infringe the patents-in-suit by the infringing acts described herein in this District.  Further, Defendants solicit and induce customers in this District, including via their websites.  On information and belief, Defendants have customers who are residents of this District and who purchase, acquire, and/or use infringing products in this District.

## PATENTS-IN-SUIT

18.    Plaintiff Klemm & Sohn GmbH & Co. KG owns the entire right, title, and interest in U.S. Patent No. 10,588,288 entitled "Petunia Plants Having a Spotted Flower Color Pattern." The '288 patent issued on Mar. 17, 2020 to inventors Nils Klemm, Andrea Dohm, Ulrich Sander, and Antonella Capo from U.S. Patent Application No. 16/579,514, filed September 23, 2019.  The '288 patent is a continuation application of U.S. application Ser. No. 15/895,447 filed Feb. 13, 2018, now issued as U.S. Pat. No. 10,462,991, which is itself a continuation of U.S. application Ser. No. 15/461,822, filed Mar. 17, 2017, now issued as U.S. Pat. No. 9,913,438, which claims priority to U.S. Provisional Application No. 62/316,271 filed on Mar. 31, 2016.  At all times relevant herein, the '288 patent was, and remains, in full force and effect.  A true and correct copy of the '288 patent is attached as **Exhibit 1** to this Complaint.

19.    Plaintiff Selecta Klemm GmbH Co. KG is the exclusive licensee of the '288 patent.

20.    Plaintiff Klemm & Sohn GmbH & Co. KG owns the entire right, title, and interest in U.S. Patent No. 11,266,114 entitled "Petunia Plants Having a Spotted Flower Color Pattern." The '114 patent issued on March 8, 2022 to inventors Nils Klemm, Andrea Dohm, Ulrich Sander,

and Antonella Capo from U.S. Patent Application No. 16/739,926, filed January 10, 2020.  The

'288 patent is a continuation application of U.S. application Ser. No. 16/579,514, filed Sep. 23,

2019, now issued as U.S. Patent 10,588,288, which is a continuation of U.S. application Ser. No.

15/895,447, filed Feb. 13, 2018, now issued as U.S. Pat. No. 10,462,991, which is itself a

continuation of U.S. application Ser. No. 15/461,822, filed Mar. 17, 2017, now issued as U.S. Pat.

No. 9,913,438, which claims priority to U.S. Provisional Application No. 62/316,271 filed on Mar.

31, 2016.  At all times relevant herein, the '114 patent was, and remains, in full force and effect.

A true and correct copy of the '114 patent is attached as **Exhibit 2** to this Complaint.

21.     Plaintiff Selecta Klemm GmbH Co. KG is the exclusive licensee of the '114 patent.

## FACTUAL BACKGROUND

## SELECTA KLEMM AND THE ASSERTED PATENTS

22.     Selecta Klemm GmbH Co. KG, which does business under the "Selecta One"

brand, is a third-generation family business.  Since the company was founded in 1932 by Gustav

Klemm, Selecta Klemm GmbH Co. KG has been a reliable supplier and partner in professional

horticulture. The name Selecta has stood for innovative breeding work and outstanding quality in

the area of young plants for generations.

23.     The Asserted Patents, discussed further below, relate to the field of ornamental

Petunia plants and plant breeding.  The genus *Petunia* belongs to the plant family Solanaceae and

is divided into 14 different species, which are endemic to South America. The geographical

distribution includes temperate and subtropical regions of Argentina, Uruguay, Bolivia, and Brazil,

with a center of diversification in southern Brazil. The common garden Petunia, *Petunia x hybrida*

(Hook.) Vilm, now commonly known as Petunia hybrid, is derived from a cross of the two species

*P. integrifolia* and *P. axillaris*. The garden Petunia was first obtained through hybridization in

1834.  Today, it is used worldwide as an outdoor pot plant, in window boxes or as a bedding plant and is one of the most important ornamental plants in terms of commercial sales and widespread use.  Petunia can be propagated from seed, cuttings, and tissue culture.

24.    In commercial Petunia breeding, there has always been great interest in the development of new flower colors and color patterns.  As a result, the modern Petunia varieties today cover a broad range of different flower colors and patterns as well as combinations therefrom.  Petunia breeders are constantly developing new and unique flower colors and patterns to appeal to consumers, in addition to other valuable traits such as hardiness and growth habit.

25.    Development of a distinct and marketable new variety of Petunia is a laborious, time-consuming, and expensive process.  Due to the wide ability to intercross different species of Petunia, new varieties possessing valuable new traits are highly useful for the development of additional new Petunia varieties possessing the newly-discovered valuable traits.    While developing a new trait is a highly cumbersome, lengthy, and costly endeavor, transferring the trait from an existing variety into another one by crossing is routine and simple work.

26.    One such highly valuable new trait in Petunia is the spotted flower color pattern described in the Asserted Patents.  The Asserted Patents provide new, distinct and stable Petunia plants having inflorescences with a unique spotted flower color pattern. This color pattern has not been observed in any known Petunia, but was discovered through the Plaintiffs' breeding program, and has led to the awarding of several issued U.S. patents to Selecta, of which the Asserted Patents are examples.  Based on the Plaintiff's information and belief, this unique spotted flower color pattern is only found in the Plaintiff's varieties (and its direct or indirect progeny), but is not found anywhere else in the gene pool of commercial or wild Petunia (or related varieties which can be crossed with Petunia).

7

27.     As shown in the photographs included in the Asserted Patents, this spotted flower color pattern is highly distinctive and represents an attractive new variety of Petunia for flower consumers.  For example, Fig. 1 of the Asserted Patents, reproduced below, is a photo of Selecta's proprietary petunia plant designated "KLEPH15313," also known as NightSky® in reference to the spotted flower color pattern of the trait, which resembles a night sky:



28.     Fig. 2 of the Asserted Patents, reproduced below, is a photo of an individual flower of Selecta's proprietary petunia plant designated "KLEPH15313," also known as NightSky®:



29.    Fig. 6 of the Asserted Patents, reproduced below, is a photo of an individual flower of Selecta's proprietary petunia plant designated "PH-2015-1874," also known as the Glacier Sky™ variety:

30.    The spotted flower color pattern Petunias of the Asserted Patents are closely associated with Selecta's name in the market.  Varieties differing in color, size, and shape, but all sharing this spotted pattern, are sold under the name "Sky Petunias."  Popular types of Sky Petunias marketed by Plaintiffs include the NightSky® variety (shown in Figs. 1 and 2 reproduced above), the Glacier Sky™ variety (shown in Fig. 6 reproduced above), the Midnight Sky™ variety, and Electric Purple Sky™ variety, among many others.  Since their introduction to the market, Selecta's spotted petunia varieties have consistently garnered strong industry and consumer attention, and commanded robust sales.

31.    The Asserted Patents further provide detailed disclosures relating to the origin of Selecta's discovery and development of petunias having a spotted flower color pattern.

32.    The Asserted Patents further provide several experimental examples with detailed breeding history information, molecular genetics relating to the spotted flower color pattern, including an investigation of the role of post-transcriptional gene silencing on the spotted flower color pattern phenotype, the impact of CMV infection on the spotted flower color pattern phenotype, expression analysis of genes associated with flower color pigmentation and patterns, and intergenic breeding with members of the related Solanaceae family such as *Calibrachoa*.

33.    The Asserted Patents further provide extensive disclosure detailing the use of petunia plants having a spotted flower color pattern to develop other petunia plants having a spotted flower color pattern through additional breeding methods, pedigree breeding, backcross breeding, recurrent selection and mass selection, mutation breeding, single-gene conversions, breeding with molecular markers, tissue culture, and targeted gene editing.  While developing a new trait is a highly laborious, lengthy, and costly endeavor, transferring the trait from an existing

variety into another one by standard breeding techniques is well known to the person skilled in the art.

## THE '288 PATENT

34.    The '288 patent includes the disclosures common to each Asserted Patent discussed above and further includes several claims to methods of producing petunia plants through a variety of breeding processes and techniques, including through breeding process steps employing Selecta's proprietary petunia line known as "KLEPH15313."

35.    Accordingly, the '288 patent recites and claims several processes for producing Petunia plants, cuttings, and seeds for plants, all having a spotted flower color pattern.

36.    For example, Claim 1 of the '288 patent recites:

1.    A method for producing a *Petunia* plant having a spotted flower color pattern comprising one or more spots on one or more petals of a flower, said method comprising:

a) crossing two *Petunia* plants,

b) harvesting the resultant *Petunia* seed,

c) growing the seed from step b to produce progeny, and

d) selecting resulting progeny for the spotted flower color pattern; wherein at least one of the two *Petunia* plants is 'KLEPH15313,' representative tissue of 'KLEPH15313' having been deposited under NCMA No. 201805004.

37.    Claim 2 of the '288 patent recites:

2.    The method of claim 1, comprising crossing the selected progeny plant having the spotted flower color pattern with a another *Petunia* plant, or with

11

itself, and selecting resulting subsequent progeny for the spotted flower color pattern.

38.    Claim 3 of the '288 patent recites:

3.    The method of claim 1, further comprising:

e) propagating the selected progeny plant via seed, cutting, or tissue culture.

39.    Claim 4 of the '288 patent recites:

4.    A method for producing a *Petunia* plant having a spotted flower color pattern comprising one or more spots on one or more petals of a flower, said method comprising:

propagating a vegetative cutting from a stock *Petunia* plant, thereby producing the *Petunia* plant having a spotted flower color pattern comprising one or more spots on one or more petals of a flower;

wherein the stock *Petunia* plant has the spotted flower color pattern, and is a product of a single cross between: a parental line plant with another plant, or with itself; wherein the parental line plant is 'KLEPH15313,' representative tissue of 'KLEPH15313' having been deposited under NCMA No. 201805004.

40.    Claim 5 of the '288 patent recites:

5.    A method for producing a *Petunia* plant having a spotted flower color pattern comprising one or more spots on one or more petals of a flower, said method comprising:

propagating a vegetative cutting from a stock *Petunia* plant, thereby

producing the *Petunia* plant having a spotted flower color pattern

comprising one or more spots on one or more petals of a flower

wherein the stock *Petunia* plant has the spotted flower color pattern and is

a product of applying a plant breeding technique to a parental line plant

having the spotted flower color pattern; wherein the parental line plant is

'KLEPH15313,' representative tissue of 'KLEPH15313' having been

deposited under NCMA No. 201805004.

41.    Claims 6-13 of the '288 patent specify plant breeding techniques using the Petunia

varieties recited in the claims.

## THE '114 PATENT

42.    The '114 patent includes the disclosures common to each Asserted Patent discussed

above and further includes several claims to methods of producing Petunia plants through a variety

of breeding processes and techniques, including through breeding process steps employing

Selecta's proprietary petunia line known as "KLEPH15313," "PH-2014-0040," "PH-2014-0443,"

and "PH-2015-1874."

43.    Accordingly, the '114 patent recites and claims several processes for producing

Petunia seeds and plants having a spotted flower color pattern.

44.    For example, Claim 1 of the '114 patent recites:

1.    A method for producing a seed that develops into a *Petunia* plant having a

spotted flower color pattern comprising one or more spots on one or more

petals of a flower, said method comprising:

crossing a first *Petunia* plant with a stock *Petunia* plant and harvesting resulting seed, thereby producing the seed that develops into the *Petunia* plant having the spotted flower color pattern comprising one or more spots on one or more petals of a flower;

wherein the first *Petunia* plant and/or the stock *Petunia* plant has the spotted flower color pattern, and is a product of one or more crosses comprising a cross between: a parental line plant with another *Petunia* plant, or with itself; wherein the parental line plant is selected from the group consisting of: 'KLEPH15313,' representative tissue of 'KLEPH15313' having been deposited under NCMA No. 201805004, 'PH-2014-0040,' representative tissue of 'PH-2014-0040' having been deposited under NCMA No. 202201008, 'PH-2014-0443,' representative tissue of 'PH-2014-0443' having been deposited under NCMA No. 202201099, and 'PH-2015-1874,' representative tissue of 'PH-2015-1874' having been deposited under NCMA No. 201908001.

45.     Claim 2 of the '114 patent recites:

2.     A method for producing a seed that develops into a *Petunia* plant having a spotted flower color pattern comprising one or more spots on one or more petals of a flower, said method comprising:

crossing a first *Petunia* plant with a stock *Petunia* plant, thereby producing the seed that develops into the *Petunia* plant having the spotted flower color pattern comprising one or more spots on one or more petals of a flower;

14

wherein the first *Petunia* and/or the stock *Petunia* plant has the spotted flower color pattern and is a product of applying a plant breeding technique to a parental line plant having the spotted flower color pattern; wherein the parental line plant is selected from the group consisting of: 'KLEPH15313,' representative tissue of 'KLEPH15313' having been deposited under NCMA No. 201805004, 'PH-2014-0040,' representative tissue of 'PH-2014-0040' having been deposited under NCMA No. 202201008, 'PH-2014-0443,' representative tissue of 'PH-2014-0443' having been deposited under NCMA No. 202201009, and 'PH-2015-1874,' representative tissue of 'PH-2015-1874' having been deposited under NCMA No. 201908001.

46.    Claims 3-19 of the '114 patent specify plant breeding techniques and provide other methods for plant breeding including inbreeding using the petunia varieties recited in the claims.

**WESTHOFF'S ADMITTED PAST USE OF SELECTA'S SPOTTEND PETUNIAS FOR BREEDING, AND PAST ACKNOWLEDGEMENT OF SELECTA'S PATENT RIGHTS**

47.    Selecta has contacted Westhoff regarding Selecta's intellectual property pertaining to its Petunia plants having a spotted color flower pattern since no later than 2017.

48.    On February 15, 2017, Selecta sent Westhoff a letter giving notice of their U.S. Plant Patent No. 27,237 which issued on October 4, 2016, and further providing notice that Selecta had pending a U.S. utility patent application relating to the NightSky® variety and Selecta's proprietary spotted color flower pattern Petunias, and further informing Westhoff that "[t]his unique and novel spotting patter[n] has been developed by Klemm after a considerable amount of time and expense."  The letter further included a printout of a Selecta webpage showing the NightSky® variety and noted that it was designated "U.S. utility patent pending."  A true and correct copy of this letter is attached as **Exhibit 3**.

15

49.     On August 18, 2017, counsel for Selecta sent Westhoff a follow-up letter informing them of the publication of the pending utility patent application mentioned in the foregoing paragraph and providing Westhoff with a copy.  A true and correct copy of this letter is attached as **Exhibit 4**.

50.     On February 13, 2018, counsel for Selecta sent Westhoff a second letter regarding the pending utility patent application mentioned in the foregoing paragraph, informing Westhoff that Selecta had received a notice of allowance and expected the patent to issue soon.  A true and correct copy of this letter is attached as **Exhibit 5**.

51.     On February 22, 2018, counsel for Westhoff responded to Selecta's February 13, 2018 letter and admitted that "[a]s part of its CONSTELLATION breeding program, Westhoff utilized Klemm *Petunia* sold under the trademark NIGHTSKY in conjunction with other varieties."  A true and correct copy of this letter is attached as **Exhibit 6**.

52.     On November 15, 2019, counsel for Selecta sent a letter to Westhoff giving notice of the issuance to Selecta of U.S. Patent 10,462,991, parent patent to the '288 and '114 patents. A true and correct copy of this letter is attached as **Exhibit 7**.

53.      On December 19, 2019, counsel for Westhoff responded to Selecta's November 15, 2019 letter, again confirming that Westhoff had used Selecta's NightSky® variety in its breeding program.

54.     Also on December 19, 2019, counsel for Selecta sent counsel for Westhoff a letter giving Westhoff notice of the pending claims in Selecta's utility patent application 16/579,514, which would eventually issue as the '288 patent.  A true and correct copy of this letter is attached as **Exhibit 8**.

55.    A copy of the pending-allowed claims attached to Selecta's December 19, 2019 letter is attached as **Exhibit 9**.

56.    On January 15, 2020, counsel for Westhoff responded to Selecta's December 19, 2019 letter regarding the pending utility patent application mentioned in the foregoing paragraph. In its letter, counsel for Westhoff suggested a meeting between the principals to discuss the subject matter of the letters being exchanged by the parties.

57.    On information and belief, Westhoff admitted, including during conversations between the parties which took place in January 2020, that it had bred and developed several petunia varieties with the spotted flower color pattern that all had been derived from Selecta's NightSky® variety, including at least the "Aries," "Gemini," "Pyxis," and "Virgo," varieties, each of which was sold under the "Constellation" name used by Westhoff.

58.    On March 18, 2020, counsel for Selecta sent a notice letter to Westhoff's intellectual property counsel, including a complete copy of the '288 patent.  In this letter, Selecta stated its awareness that Westhoff had used Selecta's patented NightSky® variety in its breeding program and development of the "Constellation" series of Petunia.  Selecta's letter further informed Westhoff that Westhoff's breeding activities propagation of the resulting varieties would practice at least claims 1-5 of the '288 patent, and further that "[a]ny sale, offer to sell and/or importation of the "Constellation" series developed using Selecta's patented NightSky® variety in an infringing manner constitutes a violation of the patent laws of the United States [under] 35 U.S.C. §§ 271(a), (b) and (g)."  A true and correct copy of this letter is attached as **Exhibit 10**.

59.    Selecta's March 18, 2020 letter further made note of Westhoff's announcement to its U.S.-based broker partners on March 4, 2020, stating that "due to the successful United States Utility Patent Application (#20200060134) by Selecta, Westhoff is no longer permitted to sell the

[Constellation varieties Aries, Gemini, Pyxis, and Virgo] once the patent enforcement goes into effect March 17th, 2020 in the United States."  "Utility Patent Application (#20200060134)" issued as the '288 patent.  A true and correct copy of this announcement is attached as **Exhibit 11**.

60.    On March 25, 2020, counsel for Westhoff responded to Selecta's March 18, 2020 letter, informing Selecta that, after March 17, 2020, no cuttings of Westhoff petunias would be imported into the United States for any variety that Westhoff had made by including NightSky® in its pedigree.  The letter further stated that Westhoff would not do further breeding using Selecta's NightSky® variety.

## WESTHOFF'S KNOWLEDGE OF THE ASSERTED PATENTS

61.    Westhoff has long had knowledge of the patent family that includes the Asserted Patents.  For example, on November 15, 2019, counsel for Selecta sent Westhoff a letter giving notice of the issuance of Selecta's U.S. Patent No. 10,462,991 and attaching a copy.  This letter also memorialized Westhoff's admission, made by its counsel no later than February 22, 2018, that it used Selecta's proprietary NightSky® petunia variety as part of its Constellation breeding program.  (*See* Exhibit 7.)

62.    Westhoff has had actual knowledge of the '288 patent since no later than March 18, 2020, the day after issuance, when counsel for Selecta sent a notice letter to Westhoff's intellectual property counsel, including a complete copy of the '288 patent.  (*See* Exhibit 10.)

63.    Westhoff has had actual knowledge of the '114 patent since no later than March 13, 2023, when counsel for Selecta sent a notice letter to Westhoff, including a complete copy of the '114 patent.  A true and correct copy of this letter is attached as **Exhibit 12**.

64.    Alternatively, on information and belief, given its knowledge of Plaintiffs' patents specifically pertaining to spotted petunias, Westhoff actively monitors Plaintiffs' patent filings and

grants, and would through this monitoring have been aware of the Asserted Patents from the day the claims of the Asserted Patents were allowed and the Asserted Patents were issued by the Patent Office.

## DEFENDANTS' INFRINGING ACTIVITIES AND  REFUSAL TO COOPERATE WITH PLAINTIFF'S INVESTIGATION

65.     On March 4, 2023, Westhoff sent Selecta a letter entitled "[n]otice of introduction of a new series of [p]etunia."  In this letter Westhoff specifically identified and acknowledged Selecta's U.S. Patent No. 10,462,991.  The '114 patent is a continuation of U.S. Patent No. 10,462,991.  In its letter, Westhoff admitted that it is "breeding and selecting for phenotypes similar to the plants connected to the 991 patent."  However, Westhoff claimed that it "has been utilizing new parentage for this breeding program."  Westhoff's letter did not identify this supposedly "new parentage."  Westhoff's letter further claimed to have done a "Quantitative Real-Time PCR" analysis of its "new breeding genotype" in comparison to Selecta's NightSky® genotype.  However, Westhoff did not provide any further details about this analysis or share it with Selecta.  On information and belief, such Quantitative Real-Time PCR analysis is not in principle a suitable method to evidence that Selecta's proprietary varieties or their progenies were not used in Westhoff's breeding programs, but at best only shows the expression level of certain genes.  A true and correct copy of this letter is attached as **Exhibit 13**.

66.     On March 13, 2023, Selecta responded to Westhoff's March 4, 2023 letter.  In this letter Selecta expressly referenced the '114 patent and provided a copy to Westhoff.  As Selecta explained to Westhoff, the issued claims of the '114 patent cover the petunias with spotted flower color patterns beyond just the NightSky® variety, cover the use of those varieties to breed further varieties, and thus extend to all varieties maintaining the spotted flower color pattern that were obtained through breeding using the processes recited in the claims of the '114 patent.  Selecta

explained the importance of ruling out any possible infringement by Westhoff and specifically requested that Westhoff share the PCR analysis referenced in its March 4, 2023 letter and also to provide "all source varieties used to develop [Westhoff's] new petunia varieties."  (*See* Exhibit 12.)  On information belief such PCR analysis is not in principle a suitable method to evidence that Selecta's proprietary varieties or their progeny were not used in Westhoff's breeding program. Westhoff continued to refuse to disclose the source of the spotted flower color pattern or from which breeding material or variety such pattern was obtained.

67.    On March 24, 2023, Westhoff sent a short reply in the German language by email stating only words to the effect that "[w]e will send material from one variety in approximately 2-3 weeks so that a test can be carried out at your premises."  This communication did not otherwise respond to the points and requests made in Selecta's March 13, 2023 letter.  A true and correct copy of this communication is attached as **Exhibit 14**.

68.    On April 3, 2023, Selecta sent another letter to Westhoff, pointing out that Westhoff's previous communication ignored Selecta's request for PCR analysis performed by Westhoff and for the complete breeding history of Westhoff's spotted petunia lines.  Selecta expressly stated in this letter that its purpose in seeking this information was to confirm noninfringement.  A true and correct copy of Selecta's April 3, 2023 letter is attached as **Exhibit 15**.

69.    On April 12, 2023, Selecta sent a further email in the German language to Westhoff, following up on Selecta's April 3, 2023 letter, reiterating Selecta's request for plant material and information.  A true and correct copy of this communication is contained within Exhibit 16.

70.    On April 18, 2023, Westhoff sent an email in the German language stating in words to the effect that: "Attached you will find the requested information. The variety Aries is a progeny

20

from the variety Night Sky. We can assure that when developing the Discoball Petunia series we haven't used any Selecta varieties of varieties from other breeders going back to Selecta varieties. The Discoball series has a totally different background."   Westhoff's April 18, 2023 communication included a one page image purporting to show the results of a scientific experiment.  Westhoff's communication did not disclose any details concerning the experiment, such as the materials and methods used, data analysis performed, or the like.  Further, Westhoff remained unwilling to disclose the "totally different background" supposedly used in Westhoff's breeding program.  A true and correct copy of this communication is attached as **Exhibit 16**.

71.     On May 3, 2023, Selecta responded to Westhoff's email of April 18, 2023 informing Westhoff that the analysis provided did not show that the Westhoff Discoball™ varieties were developed independently from Selecta's proprietary material.  Instead, as Selecta's letter explained, Westhoff's own data confirmed that the spotted flower color pattern phenotype in Westhoff's Discoball™ petunias is caused by the same mode of action as the spotted flower color pattern in Selecta's proprietary petunias.  Selecta further proposed the use of a respected independent expert in plant genetics from Leibnitz Universität Hannover to confirm independent development of Westhoff's Discoball™ varieties and noninfringement of Selecta's patent rights. A true and correct copy of Selecta's May 3, 2023 letter is attached as **Exhibit 17**.

72.     On May 12, 2023, Westhoff provided a further communication to Selecta providing a duplicate image of the same image disclosed on April 18, 2023, but providing no further relevant details regarding the experiment performed.  A true and correct copy of this communication and its attachments is attached as **Exhibit 18**.

73.     Between June 12, 2023, and June 28, 2023, Selecta and Westhoff exchanged communications in the German language regarding an in-person meeting between representatives

from Selecta and Westhoff to discuss the issues, and reiterating Selecta's request for the use of an independent expert to validate the breeding history of the Westhoff Discoball™ petunias.  A true and correct copy of these communications is contained within attached **Exhibit 19**.

74.     On July 17, 2023, Selecta again wrote to Westhoff, explaining that Selecta still had not received the requested information.  A true and correct copy of this communication is contained within Exhibit 20.

75.     On July 21, 2023, Westhoff informed Selecta that it intended to renege on its offer to disclose the breeding history for its Discoball™ petunias.  Westhoff stated that would continue to offer plant material from Discoball™ petunias for the purpose of genetic testing, but did not provide any such material or commit to any date for doing so.  A true and correct copy of this communication is attached as **Exhibit 20**.

76.     On July 25, 2023, Selecta responded, reiterating its request for a confidential mechanism for disclosure of Westhoff's breeding history information for its Discoball™ petunias, and reiterating its desire to avoid the need for litigation to resolve the dispute.  A true and correct copy of this communication is attached as **Exhibit 21**.

77.     On August 11, 2023, Westhoff responded, stating its continued belief that a marker analysis should be sufficient and questioning the criteria that would be used for resolution of the matter by an independent expert.  A true and correct copy of this communication is attached as **Exhibit 22**.

78.     After this time, Westhoff's communications on the issue of providing breeding information to Selecta ceased.  To this day, Westhoff still has not provided the plant material it promised nor disclosed the breeding histories or pedigrees for its Discoball™ petunia varieties as Selecta repeatedly requested.

79.     On September 5, 2023, Selecta communicated with Westhoff inquiring whether Westhoff intended to offer petunia varieties in the United States with the spotted "Sky" pattern.  A true and correct copy of this communication is attached as **Exhibit 23**.

80.     On the same day, Westhoff responded and stated only words to the effect that "we don't offer petunias in the U.S. that would infringe your patents."  Westhoff provided no further details regarding the identity of spotted petunias it intended to sell in the United States, or the breeding history information for any such materials.   A true and correct copy of this communication is attached as **Exhibit 24**.

81.     On information and belief, dissatisfied with the lack of distinctive spotted petunias in their flower offerings, and contrary to its past removal of infringing plant material from the United States market and pledge not to breed with Selecta's proprietary NightSky® variety, Westhoff continued to use plant material including Selecta's proprietary spotted petunia genetics and used such plant material in their breeding programs.   These actions were taken without Selecta's knowledge or permission.

82.     On information and belief, without performing the method steps patented in at least one of the claims of the '288 and  '114 patents, it would not have been possible for Westhoff to obtain the Accused Products through its plant breeding program or to introduce the Accused Products into the United States marketplace through its concerted actions with the other named Defendants.  Further on information and belief, the unique spotted flower color pattern is only expressed by the Plaintiff's varieties (and its direct or indirect progeny), but is not found anywhere else in the gene pool of commercial or wild Petunia (or related varieties which can be crossed with Petunia).

83.    On information and belief, with knowledge of the '288 and '114 patents, its related applications, and its family members, Westhoff acquired Selecta's protected plant material and has used that plant material in connection with its commercial ambitions.   Westhoff's breeding activities using Selecta's protected plant material in an improper effort, for Westhoff's own commercial gain, to leverage the years of effort and significant financial resource spent by Selecta devoted to its breeding efforts with petunias.   Westhoff's effort to cut short the need to perform its own creative plant breeding efforts to develop its own varieties, by instead using Selecta's plant material in its own petunia program, is the scenario that Selecta sought to avoid by pursuing and obtaining patent protection in the United States.   These actions by Westhoff, done in concert with the other named Defendants, have caused and will continue to cause harm to Selecta.

84.    On information and belief, Westhoff's infringing breeding methods used to create Accused Products were performed using at least the petunia varieties recited in the claims of the '288 patent, to wit: 'KLEPH15313,' representative tissue of 'KLEPH15313' having been deposited under NCMA No. 201805004.

85.    Specifically, for example with regard to Claim 5 of the '288 patent, in order to create Accused Products, on information and belief Westhoff practiced a method for producing a Petunia plant having a spotted flower color pattern comprising one or more spots on one or more petals of a flower, by performing the method step of propagating a vegetative cutting from a stock Petunia plant, thereby producing the Petunia plant having a spotted flower color pattern comprising one or more spots on one or more petals of a flower, and wherein the stock Petunia plant has the spotted flower color pattern and is a product of applying a plant breeding technique to a parental line plant having the spotted flower color pattern, and wherein the parental line plant is

24

'KLEPH15313,' also known as the NightSky® variety, representative tissue of 'KLEPH15313' having been deposited under NCMA No. 201805004.

86.    Further on information and belief, Accused Products described in the preceding paragraph were made using at least one of the plant breeding techniques recited in Claims 6 through 13 of the '288 patent.

87.    On information and belief, Westhoff's infringing breeding methods used to created Accused Products were performed using at least one of the petunia varieties recited in the claims of the '114 patent, to wit: 'KLEPH15313,' representative tissue of 'KLEPH15313' having been deposited under NCMA No. 201805004, 'PH-2014-0040,' representative tissue of 'PH-2014-0040' having been deposited under NCMA No. 202201008, 'PH-2014-0443,' representative tissue of 'PH-2014-0443' having been deposited under NCMA No. 202201099, and/or 'PH-2015-1874,' representative tissue of 'PH-2015-1874' having been deposited under NCMA No. 201908001.

88.    Specifically, for example with regard to Claim 2 of the '114 patent, in order to create Accused Products, on information and belief Westhoff practiced a method for producing a seed that develops into a Petunia plant having a spotted flower color pattern comprising one or more spots on one or more petals of a flower, by performing the method step of crossing a first Petunia plant with a stock Petunia plant, thereby producing the seed that develops into the Petunia plant having the spotted flower color pattern comprising one or more spots on one or more petals of a flower, wherein the first Petunia and/or the stock Petunia plant has the spotted flower color pattern and is a product of applying a plant breeding technique to a parental line plant having the spotted flower color pattern, and wherein the parental line plant is selected from the group consisting of: 'KLEPH15313,' also known as the NightSky® variety, representative tissue of 'KLEPH15313' having been deposited under NCMA No. 201805004, 'PH-2014-0040,'

representative tissue of 'PH-2014-0040' having been deposited under NCMA No. 202201008, 'PH-2014-0443,' representative tissue of 'PH-2014-0443' having been deposited under NCMA No. 202201009, and/or 'PH-2015-1874,' representative tissue of 'PH-2015-1874' having been deposited under NCMA No. 201908001.

89.      Further on information and belief, Accused Products described in the preceding paragraph were made using at least one of the plant breeding techniques recited in Claims 3 through 10 of the '114 patent.

90.      Specifically, for example with regard to Claim 11 of the '114 patent, in order to create Accused Products, on information and belief Westhoff practiced a method for producing a seed that develops into a Petunia plant having a spotted flower color pattern comprising one or more spots on one or more petals of a flower, by performing the method step of selfing a stock Petunia plant, thereby producing the seed that develops into the Petunia plant having the spotted flower color pattern comprising one or more spots on one or more petals of a flower, wherein the stock Petunia plant has the spotted flower color pattern and is a product of applying a plant breeding technique to a parental line plant having the spotted flower color pattern; wherein the parental line plant is selected from the group consisting of: 'KLEPH15313,' also known as the NightSky® variety, representative tissue of 'KLEPH15313' having been deposited under NCMA No. 201805004, 'PH-2014-0040,' representative tissue of 'PH-2014-0040' having been deposited under NCMA No. 202201008, 'PH-2014-0443,' representative tissue of 'PH-2014-0443' having been deposited under NCMA No. 202201009, and/or 'PH-2015-1874,' representative tissue of 'PH-2015-1874' having been deposited under NCMA No. 201908001.

91.    Further on information and belief, Accused Products described in the preceding paragraph were made using at least one of the plant breeding techniques recited in Claims 12 through 19 of the '114 patent.

92.    On information and belief, Defendant Westhoff has imported into the United States, offered to sell, sold, and/or used within the United States Accused Products made by a process patented in the United States, for example at the California Spring Trials event held in California during March and April 2023.  Example images showing Defendant Westhoff's advertisement and display of Accused Products are reproduced below:







93.    As shown in this side-by-side comparison, the Accused Product Discoball™ variety has a spotted color flower pattern that is identical in appearance to Selecta's NightSky® variety:

| Selecta NightSky® Variety | Westhoff Discoball™ |
|---|---|



94.    On information and belief, Defendant Westhoff contracts with Defendants Vivero, PSI Mexico, and Cohen to make Accused Products outside the United States for importation and sale within the United States.  On information and belief, Defendants Vivero, PSI Mexico, and Cohen have and will continue to import into the United States, and offer for sale, sell, and use within the United States Accused Products.

95.    On information and belief, Defendant Vivero has imported into the United States, offered to sell, sold, and/or used within the United States Accused Products made by a process patented in the United States, or will soon commit these infringing acts.  An example of Defendant Vivero's catalog, available in the United States, advertising Accused Products is reproduced below; a true and correct copy of the catalog from which this image was drawn is attached as **Exhibit 25**:



96.    On information and belief, Defendant PSI Mexico has imported into the United States, offered to sell, sold, and/or used within the United States Accused Products made by a

process patented in the United States, or will soon commit these infringing acts.  An example of Defendant PSI Mexico's catalog, available in the United States, advertising Accused Products is reproduced below; a true and correct copy of the catalog from which this image was drawn is attached as **Exhibit 26**:



97.     On information and belief, Defendant Cohen has imported into the United States, offered to sell, sold, and/or used within the United States Accused Products made by a process patented in the United States, for example at the California Spring Trials event held in California during March and April 2023.  An example photo showing Defendant Cohen's display of Accused Products is reproduced below and is attached as **Exhibit 27**:



98.     Westhoff's inexplicable withdrawal of its offer to share breeding and genetic information with Plaintiffs, or to share plant material, coupled with its refusal since then to cooperate with Plaintiffs' investigation, further shows the likelihood that the Accused Products were made by infringing at least one of the methods claimed in the '288 and '114 patents.

## COUNT I

## (INFRINGEMENT OF U.S. PATENT NO. 10,588,288)

99.     Plaintiffs repeat and incorporate by reference paragraphs 1-98 above as if fully set forth herein.

100.    As explained in the foregoing paragraphs, Westhoff has directly infringed and continues to directly infringe the '288 patent by making, using, offering for sale, selling, and/or importing into the United States Accused Products made by at least one of the processes claimed in the '288 patent, in violation of at least 35 U.S.C. § 271(g).

101.    As explained in the foregoing paragraphs, Vivero has directly infringed and continues to directly infringe the '288 patent by making, using, offering for sale, selling, and/or importing into the United States Accused Products made by at least one of the processes claimed in the '288 patent, in violation of at least 35 U.S.C. § 271(g).

102.    As explained in the foregoing paragraphs, PSI Mexico has directly infringed and continues to directly infringe the '288 patent by making, using, offering for sale, selling, and/or importing into the United States Accused Products made by at least one of the processes claimed in the '288 patent, in violation of at least 35 U.S.C. § 271(g).

103.    As explained in the foregoing paragraphs, Cohen has directly infringed and continues to directly infringe the '288 patent by making, using, offering for sale, selling, and/or importing into the United States Accused Products made by at least one of the processes claimed in the '288 patent, in violation of at least 35 U.S.C. § 271(g).

104.    Specifically and as explained in the foregoing paragraphs, on information and belief, each of the Vivero, PSI Mexico, and Cohen Defendants have and will continue to import into the United States Accused Products made by at least one of the processes claimed in the '288 patent, in violation of at least 35 U.S.C. § 271(g).

105.    A substantial likelihood exists that the Accused Products were made by at least one of Selecta's processes claimed in the '288 patent.

106.    Plaintiffs have made a reasonable effort to determine the process actually used in the production of the Accused Products and was unable to so determine, due to Westhoff's refusal to cooperate with Plaintiffs' efforts.

107.    Accordingly, pursuant to 35 U.S.C. § 295, a presumption exists that the Accused Products were made by at least one of the processes patented in the '288 patent.

108.    Westhoff has infringed, and continues to infringe the claims of the '288 patent by actively inducing others, including the other named Defendants, to import, sell, offer to sell, and use the Accused Products within the United States.  Westhoff's commercialization partners, distributors, and nurseries, including the other named Defendants, directly infringe the claims of the '288 patent, in violation of 35 U.S.C. § 271(g).  Westhoff, with knowledge of the '288 patent and knowledge of the infringing nature of the Accused Products, intentionally instructs such third parties to import, sell, offer to sell, and use the Accused Products within the United States in violation of 35 U.S.C. § 271(g).  Westhoff is therefore liable for infringement of at least one claim of the '288 patent under 35 U.S.C. § 271(b).

109.    Defendant's infringement of the '288 patent was, and continues to be, willful and deliberate.

110.    Plaintiffs have been and continue to be damaged by Defendant's infringement of the '288 patent and will suffer irreparable injury unless the infringement is enjoined by this Court.

111.    Defendant's conduct in infringing the '288 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

## COUNT II

## (INFRINGEMENT OF U.S. PATENT NO. 11,266,114)

112.    Plaintiffs repeat and incorporate by reference paragraphs 1-111 above as if fully set forth herein.

113.    As explained in the foregoing paragraphs, Westhoff has directly infringed and continues to directly infringe the '114 patent by making, using, offering for sale, selling, and/or importing into the United States Accused Products made by at least one of the processes claimed in the '114 patent, in violation of at least 35 U.S.C. § 271(g).

114.    As explained in the foregoing paragraphs, Vivero has directly infringed and continues to directly infringe the '114 patent by making, using, offering for sale, selling, and/or importing into the United States Accused Products made by at least one of the processes claimed in the '114 patent, in violation of at least 35 U.S.C. § 271(g).

115.    As explained in the foregoing paragraphs, PSI Mexico has directly infringed and continues to directly infringe the '114 patent by making, using, offering for sale, selling, and/or importing into the United States Accused Products made by at least one of the processes claimed in the '114 patent, in violation of at least 35 U.S.C. § 271(g).

116.    As explained in the foregoing paragraphs, Cohen has directly infringed and continues to directly infringe the '114 patent by making, using, offering for sale, selling, and/or importing into the United States Accused Products made by at least one of the processes claimed in the '114 patent, in violation of at least 35 U.S.C. § 271(g).

117.    Specifically and as explained in the foregoing paragraphs, on information and belief, each of the Vivero, PSI Mexico, and Cohen Defendants have and will continue to import into the United States Accused Products made by at least one of the processes claimed in the '114 patent, in violation of at least 35 U.S.C. § 271(g).

118.    A substantial likelihood exists that the Accused Products were made by at least one of Selecta's processes claimed in the '114 patent.

119.    Plaintiffs have made a reasonable effort to determine the process actually used in the production of the Accused Products and was unable to so determine, due to Westhoff's refusal to cooperate with Plaintiffs' efforts.

120.    Accordingly, pursuant to 35 U.S.C. § 295, a presumption exists that the Accused Products were made by at least one of the processes patented in the '114 patent.

121.    Westhoff has infringed, and continues to infringe the claims of the '114 patent by actively inducing others, including the other named Defendants, to import, sell, offer to sell, and use the Accused Products within the United States.   Westhoff's commercialization partners, distributors, and nurseries, including the other named Defendants, directly infringe the claims of the '114 patent, in violation of 35 U.S.C. § 271(g).  Westhoff, with knowledge of the '114 patent and knowledge of the infringing nature of the Accused Products, intentionally instructs such third parties to import, sell, offer to sell, and use the Accused Products within the United States in violation of 35 U.S.C. § 271(g).  Westhoff is therefore liable for infringement of at least one claim of the '114 patent under 35 U.S.C. § 271(b).

122.    Defendant's infringement of the '114 patent was, and continues to be, willful and deliberate.

123.    Plaintiffs have been and continue to be damaged by Defendant's infringement of the '114 patent and will suffer irreparable injury unless the infringement is enjoined by this Court.

124.    Defendant's conduct in infringing the '114 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Selecta Klemm GmbH Co. KG and Klemm & Sohn GmbH & Co. KG request the following relief from this Court:

A.    A judgment that each Defendant is liable for infringement of one or more claims of the '288 patent;

B.    A judgment that each Defendant is liable for infringement of one or more claims of the '114 patent;

C.      Compensatory damages in an amount according to proof, and in any event no less than a reasonable royalty, including all pre-judgment and post-judgment interest at the maximum rate allowed by law;

D.      Permanent injunction for Defendants' infringement of the '288 patent in accordance with 35 U.S.C. § 283;

E.      Permanent injunction for Defendants' infringement of the '114 patent in accordance with 35 U.S.C. § 283;

F.      Judgment that each Defendant's infringement was willful and enhancement of any monetary damages pursuant to 35 U.S.C. § 284;

G.      A declaration that this is an exceptional case under 35 U.S.C. § 285 and an award of attorneys' fees, costs, and expenses to Plaintiffs;

H.      All appropriate equitable and injunctive relief; and

I.      Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs Selecta Klemm GmbH Co. KG and Klemm & Sohn GmbH & Co. KG demand a trial by jury for all issues so triable.

Dated:  November 20, 2023

/s/ Deron R. Dacus
Deron R. Dacus

**The Dacus Firm, P.C.**
Deron R. Dacus
Texas Bar No. 00790553
ddacus@dacusfirm.com
821 ESE Loop 323
Suite 430
Tyler, TX  75701
Telephone:      (903) 705-7233
Facsimile:      (903) 705-7233

*Attorneys for Plaintiffs Selecta Klemm GmbH Co. KG and Klemm & Sohn GmbH & Co. KG*

*Of Counsel:*

Daniel J. Knauss, J.D., Ph.D. (CA Bar 267414)
(*pro hac vice* to be filed)
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
Telephone:      (650) 843-5000
Facsimile:      (650) 849-7400
Email:  dknauss@cooley.com